FILED
IN OPEN COURT
FEB 27 2025
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ELEVIEW INTERNATIONAL, INC.,<br>(Couns 1-16)<br><br>OLEG NAYANDIN, AND<br>Count 1-17)<br><br>VITALIY BORISENKO,<br>(Count 1-16)<br><br>*Defendants*. | Criminal No. 1:25-CR-46<br><br>Count 1: 50 U.S.C. §§ 4819(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(F), (a)(2)(G) (Conspiracy to violate the Export Control Reform Act and the Export Administration Regulations)<br><br>Counts 2-6: 50 U.S.C. §§ 4819(a)(1), (a)(2)(A) (Violations of the Export Control Reform Act and the Export Administration Regulations)<br><br>Counts 7-11: 18 U.S.C. § 554(a) (Smuggling goods from the United States)<br><br>Counts 12-16: 50 U.S.C. §§ 4819(a)(1), (a)(2)(F) (Submission of false or misleading export information)<br><br>Count 17: 50 U.S.C. §§ 4819(a)(1), (a)(2)(F) (Submission of false or misleading export information) |

**INDICTMENT**

February 2025 Term – at Alexandria, Virginia

THE GRAND JURY CHARGES THAT:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

1. ELEVIEW INTERNATIONAL, INC. ("ELEVIEW") was a company based in Chantilly, Virginia, within the Eastern District of Virginia. ELEVIEW operated a freight and mail consolidation and exportation business.

2. As part of its freight and mail consolidation business, ELEVIEW operated a website called "BuyUSA.ru." This website allowed individuals in Russia to order goods from the United States directly from stores in the United States or through online retail marketplaces based in the United States. After a customer placed an order through BuyUSA.ru, ELEVIEW and its employees received the shipments in warehouses located in Chantilly, Virginia, within the Eastern District of Virginia, or Delaware, and then consolidated packages to be reshipped to the ultimate customers and end users, most of whom were located in Russia.

3. OLEG NAYANDIN was the Chief Executive Officer, President, and sole owner of ELEVIEW.

4. VITALIY BORISENKO was the Logistics Coordinator at ELEVIEW and handled several aspects of the day-to-day operation of ELEVIEW's warehouse, freight and mail consolidation, and interactions with freight forwarders or customers.

5. RUSSIAN TELECOM CO is a large Russian telecommunications company. ELEVIEW supplied RUSSIAN TELECOM CO with telecommunications equipment for approximately 15 years. RUSSIAN TELECOM CO is a major supplier of telecommunications equipment to the Russian government, including Russia's Federal Security Service ("FSB"), the Russian internal security and intelligence agency.

6. TURKISH LOCOMOTIVE CO is a Turkish locomotive company located in Istanbul, Turkey.

7. Russia Post is the national postal operator of Russia. It is responsible for the delivery of mail in Russia and the issuance of postage stamps.

8. FINNISH FREIGHT FORWARDER is a freight forwarder located in Virolahti, Finland, near the border between Finland and Russia. FINNISH FREIGHT FORWARDER supports a RUSSIAN POST office at its warehouse location, which enables customers to easily ship mail and goods to Russia.

9. KAZAKH FREIGHT FORWARDER is a Kazakhstan-based freight company that offers shipping services within Kazakhstan and to other countries. KAZAKH FREIGHT FORWARDER advertises that it delivers goods to Russia.

10. Beginning on or about February 24, 2022, and following the Russian invasion of Ukraine, the United States imposed further export restrictions on goods being shipped to Russia.

11. Beginning on or about February 24, 2022, through on or about June 21, 2023, the DEFENDANTS conspired with each other, and with others known and unknown to the grand jury, to violate the U.S. export controls on Russia, smuggle goods from the United States to Russia, and submit and cause to be submitted false and misleading export information to the United States government.

12. The DEFENDANTS conspired to violate the Export Control Reform Act ("ECRA") and the Export Administration Regulations ("EAR"), 15 C.F.R. parts 730-774, including the Implementation of Sanctions Against Russia Under the Export Administration Regulations (hereinafter the "EAR Russia Sanctions"), 87 Fed. Reg. 12,226 (Mar. 3, 2022), which, inter alia, amended the EAR to provide for new requirements to obtain a license from the U.S.

Department of Commerce to export to Russia certain items subject to the EAR, *see* 15 C.F.R. § 746.8. The DEFENDANTS conspired to violate ECRA and the EAR through three similar export-control evasion schemes to illegally export controlled goods and technology from the United States to Russia through intermediary countries without the required export licenses:

13. ***The Turkey Scheme.*** From approximately May 2022 through February 2023, the DEFENDANTS exported approximately $1.5 million worth of telecommunications equipment from the United States to TURKISH LOCOMOTIVE CO in Turkey. The DEFENDANTS falsely stated on export documentation that TURKISH LOCOMOTIVE CO was the ultimate consignee for this telecommunications equipment, but the DEFENDANTS knew and understood that the equipment would be transshipped from Turkey to a major telecommunications company in Russia, RUSSIAN TELECOM CO. The telecommunications equipment included dozens of goods that required licenses for export to Russia, which the DEFENDANTS never obtained. The telecommunications equipment that the DEFENDANTS illegally exported to RUSSIAN TELECOM CO. has an array of potential applications, including use by the Russian military to create and expand communication networks to further its war effort in Ukraine.

14. ***The Finland Scheme.*** From approximately March 2022 through June 2023, the DEFENDANTS smuggled approximately $3.4 million worth of goods from the United States to FINNISH FREIGHT FORWARDER, a freight forwarder in Finland that neither purchased nor sold goods. The DEFENDANTS falsely listed FINNISH FREIGHT FORWARDER as the ultimate consignee on export documentation, but the DEFENDANTS knew and understood that the goods would be transshipped from Finland to Russia. The DEFENDANTS then coordinated with FINNISH FREIGHT FORWARDER and the Russia Post transship the goods to the real end users in Russia.

15. The goods that the DEFENDANTS exported to Russia through the Finland Scheme included goods that required a license to export to Russia, which the DEFENDANTS did not obtain despite explicit warnings from U.S. authorities that transshipping goods to Russia through Finland without a license from BIS was illegal. Notably, the DEFENDANTS exported goods that the U.S. Department of Commerce's Bureau of Industry and Security ("BIS") has identified as "high priority" items, meaning that these items are particularly significant to Russian weaponry and have been used to fuel Russia's war machine.

16. ***The Kazakhstan Scheme.*** From approximately March 2022 through June 2023, the DEFENDANTS exported approximately $1.4 million worth of consumer goods, electronics, and telecommunications equipment to KAZAKH SHIPPING SERVICE in Kazakhstan. The DEFENDANTS falsely stated on export documentation that KAZAKH SHIPPING SERVICE was the end user or ultimate consignee for these exports, but the DEFENDANTS knew and understood that these goods would be transshipped to end users in Russia. The items that the DEFENDANTS exported through Kazakhstan to Russia in this scheme included thousands of dollars' worth of goods that required a license to export to Russia, which the DEFENDANTS never obtained.

17. Combined, the DEFENDANTS smuggled approximately $6 million worth of goods from the United States into Russia after the EAR Russia Sanctions were implemented on February 24, 2022, including the types of technology and equipment that Russia is using to further its war in Ukraine. Through these schemes, the DEFENDANTS have committed multiple violations of ECRA and the EAR, including by exporting goods subject to the EAR to Russia without the required licenses and by causing false information concerning the end users (*i.e.*, ultimate consignees) of goods to be submitted to the U.S. Department of Commerce, despite the fact that

the DEFENDANTS knew that the end users were actually located within Russia and intended to ship the goods to end users in Russia.

Manner and Means of the Conspiracy

18. It was part of the conspiracy that NAYANDIN and BORISENKO, and others known and unknown to the grand jury, agreed, combined, and worked together and with each other to operate ELEVIEW in a manner that violated ECRA and the EAR, in order to continue their business of sending freight and mail to Russia-based customers after the imposition of the EAR Russia Sanctions on or about February 24, 2022.

19. As set forth in further detail below, the members of the conspiracy used intermediary companies in countries geographically close to Russia, and to which no export license was needed pursuant to U.S. export controls, as fictitious "end users" in order to circumvent the U.S. export controls on Russia. These fictitious end users included companies like TURKISH LOCOMOTIVE CO with a business unrelated to the goods that the co-conspirators exported, and freight forwarders, like FINNISH FREIGHT FORWARDER and KAZAKH FREIGHT FORWARDER, that would transship the goods to Russia.

20. It was further part of the conspiracy that the DEFENDANTS and their co-conspirators filed and caused to be filed false and misleading export information with the U.S. government, claiming that the end users of the goods being exported were these intermediary companies in countries where export licenses were generally not required, in order to conceal and effectuate their unlawful exports to the true end users in Russia without a license.

21. It was further part of the conspiracy that the DEFENDANTS and their co-conspirators coordinated with last-leg freight forwarders to ensure delivery of goods exported from the United States to the true end users located in Russia. The DEFENDANTS directed and

facilitated the freight forwarders' deliveries to ELEVIEW's Russian customers by placing Russia Post barcodes and tracking numbers on packages, or otherwise coordinating with the freight forwarders to identify and deliver goods to the true end users located in Russia.

22. Members of the conspiracy, including ELEVIEW, NAYANDIN, and BORISENKO, and others, committed the following acts in the Eastern District of Virginia and elsewhere, including, but not limited to:

23. During all times relevant to this conspiracy, ELEVIEW operated a warehouse in Chantilly, Virginia, wherein ELEVIEW employees consolidated and packaged goods for export to Russia as part of this conspiracy.

24. ***Exports to RUSSIAN TELECOM CO. through fictitious end user TURKISH LOCOMOTIVE CO.*** On or about February 25, 2022, a RUSSIAN TELECOM CO. employee requested that ELEVIEW prepare a "test shipment on a new route" to RUSSIAN TELECOM CO's company affiliate in Kazakhstan (RUSSIAN TELECOM CO-KZ).

25. Between on or about March 31, 2022, and on or about April 4, 2022, NAYANDIN and BORISENKO corresponded with RUSSIAN TELECOM CO employees about how to fill out an official U.S. export document, the Form BIS-711.

26. On or about April 4, 2022, NAYANDIN instructed employees of RUSSIAN TELECOM CO. to falsely state that ELEVIEW and RUSSIAN TELECOM CO-KZ had been doing business together for one year, when in fact the two entities had not engaged in prior business dealings.

27. On or about April 21, 2022, NAYANDIN emailed the Form BIS-711 with the false representation about the length of the relationship between ELEVIEW and RUSSIAN TELECOM

CO.'s Kazakhstan-based affiliate to a Special Agent with the US. Department of Commerce, Bureau of Industry and Security.

28. On or about April 15, 2022, NAYANDIN signed a supply contract with TURKISH LOCOMOTIVE CO.

29. On or about June 6, 2022, BORISENKO approved the final export documents, which were signed by NAYANDIN, for the shipment of telecommunications equipment worth approximately $20,000 by ELEVIEW to TURKISH LOCOMOTIVE CO in Turkey.

30. The same day, BORISENKO sent an email to a Special Agent with the U.S. Department of Commerce, Bureau of Industry and Security, that falsely stated the shipment by ELEVIEW was destined for TURKISH LOCOMOTIVE CO as the ultimate end user in Turkey. Included in this shipment were 15 types of telecommunications equipment, such as commercial network switches, that required licenses for export to Russia, but did not require a license for export to Turkey. The DEFENDANTS never obtained an export license for any of these 15 goods.

31. On or about June 20, 2022, Russia-based employees of RUSSIAN TELECOM CO. emailed BORISENKO about an inspection they had conducted of the shipment that the DEFENDANTS had falsely stated was destined for TURKISH LOCOMOTIVE CO in Turkey.

32. Between the first test shipment in June 2022 and the last identified shipment in February 2023, the DEFENDANTS shipped telecommunications equipment to RUSSIAN TELECOM CO through TURKISH LOCOMOTIVE CO on 25 separate occasions. On each shipment, BORISENKO or NAYANDIN was listed as the contact person for ELEVIEW. In all, the reported value of those 25 shipments totals approximately $1,478,808.00 worth of telecommunications equipment. Many—if not all—of these shipments contained

telecommunications equipment that was export controlled and needed a license for export to Russia, which the DEFENDANTS did not obtain.

33. ***Exports to Russia through fictitious end user FINNISH FREIGHT FORWARDER.*** In an email dated March 11, 2022, BORISENKO requested from a freight forwarder in Maryland a shipping quote for several pallets going to Finland, telling the freight forwarder's employee that the "shipment is for Finland ONLY, and will not be transported to Russia."

34. That same day, BORISENKO sent the Maryland freight forwarder a Shipper's Letter of Instruction ("SLI"), which is an export document providing information about the shipment, and which was signed by NAYANDIN and dated March 11, 2022. On the SLI, FINNISH FREIGHT FORWARDER and ELEVIEW were listed as the "Ultimate Consignees," with FINNISH FREIGHT FORWARDER's address in Finland.

35. Also on March 11, 2022, BORISENKO emailed employees from FINNISH FREIGHT FORWARDER and Russia Post, which is the national mail company of Russia, about the package he had arranged to ship through the Maryland freight forwarder. NAYANDIN was copied on the email. BORISENKO attached several documents to this email, including a spreadsheet showing that the intended recipients included dozens of individuals with addresses in Russia, including in Moscow, Yekaterinburg, St. Petersburg, and Ryazan.

36. On or about March 15, 2022, NAYANDIN emailed the same employees at FINNISH FREIGHT FORWARDER and Russia Post. NAYANDIN stated, "Hello colleagues. This cargo arrived yesterday. You need to print documents on it. Your barcodes are on every box. All okay?"

37. On or about July 8, 2022, the DEFENDANTS shipped an ethernet transceiver to FINNISH FREIGHT FORWARDER with the knowledge and understanding that it would then be exported to a buyer in St. Petersburg, Russia. This ethernet transceiver required a license to be exported to Russia from the United States. The DEFENDANTS never obtained an export license for this ethernet transceiver.

38. On or about August 9, 2022, NAYANDIN placed an order for 17 electronics components worth approximately $700.00 from a U.S. company.

39. On or about August 17, 2022, the DEFENDANTS shipped the 17 electronics components to FINNISH FREIGHT FORWARDER with the knowledge and understanding that these components would then be exported to end users in Russia. Nine of these components required a license to be exported to Russia from the United States, which the DEFENDANTS never obtained.

40. Between the first shipment in March 2022 and June 2023, the DEFENDANTS smuggled approximately eighty shipments of goods from the United States to Russia through Finland. On each shipment, BORISENKO or NAYANDIN was listed as the contact person for ELEVIEW. In all, the reported value of those 82 shipments totals approximately $3,450,772.00 worth of goods.

41. ***Exports to Russia through fictitious end user KAZAKH FREIGHT FORWARDER***. On or about June 12, 2022, BORISENKO approved the shipment of a package by ELEVIEW to KAZAKH FREIGHT FORWARDER in Kazakhstan. This package contained an oscilloscope, an instrument used for measuring electrical signals, that required a license to be exported from Russia to the United States, which the DEFENDANTS never obtained.

42. On or about June 13, 2022, BORISENKO emailed an employee of KAZAKH FREIGHT FORWARDER a spreadsheet reflecting the contents of the June 12, 2022 shipment to KAZAKH FREIGHT FORWARDER in Kazakhstan, showing that the ultimate end user of the oscilloscope was located in Moscow, Russia.

43. Between in or about March 2022 and in or about June 2023, the DEFENDANTS exported approximately 54 shipments of goods from the United States to Russia through Kazakhstan. Each shipment listed Kazakhstan as the country of ultimate destination and KAZAKH FREIGHT FORWARDER as the ultimate consignee. On each shipment, BORISENKO or NAYANDIN was listed as the contact person for ELEVIEW. In all, the reported value of those 54 shipments totals approximately $1,468,816.00 worth of goods equipment.

COUNT ONE
(Conspiracy to violate the Export Control Reform Act of 2018
and the Export Administration Regulations)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this Indictment are realleged and incorporated by reference as though fully set forth herein.

Beginning on or about February 24, 2022 and continuing up to and including on or about June 21, 2023, in Chantilly, Virginia, within the Eastern District of Virginia,

**ELEVIEW INTERNATIONAL, INC.,**

**OLEG NAYANDIN,**

**VITALIY BORISENKO,**

and others, both known and unknown to the grand jury, did willfully conspire to violate the Export Control Reform Act ("ECRA") and the Export Administration Regulations ("EAR"), that is:

a. Engaging in conduct prohibited by and contrary to, and refraining from engaging in conduct required by ECRA and the EAR, including exporting and causing others to export items subject to the EAR to Russia without having first obtained the required licenses from the U.S. Department of Commerce, contrary to 50 U.S.C. § 4819(a)(2)(A);

b. Causing and aiding, abetting, counseling, commanding, inducing, procuring, permitting, and approving the doing of an act prohibited, and the omission of an act required by ECRA and the EAR, contrary to 50 U.S.C. § 4819(a)(2)(B);

c. Making false and misleading representation, statement, and certification, and falsifying and concealing material fact, directly to the U.S. Department of Commerce, and an official of another United States agency, and indirectly through another person: (1) in connection with the preparation, submission,

issuance, use, and maintenance of export control document and report filed and required to be filed pursuant to the EAR, and for the purpose of and in connection with effecting export and reexport of an item subject to the EAR; and (2) for the purpose of and in connection with effecting export, reexport, and in-country transfer of an item subject to the EAR and service and other activity of a United States person, contrary to 50 U.S.C. § 4819(a)(2)(F); and

d. Engaging in a transaction and taking other action with intent to evade the provisions of ECRA, the EAR, and an order, license, and authorization issued thereunder, contrary to 50 U.S.C. § 4819(a)(2)(G).

(In violation of Title 50, United States Code, Sections 4819(a)(1), (a)(2)(A), (a)(2)(B), (a)(2)(F), (a)(2)(G) and (b).)

COUNTS TWO THROUGH SIX
(Violations of the Export Control Reform Act of 2018
and the Export Administration Regulations)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about the following dates, in Chantilly, Virginia, within the Eastern District of Virginia, the DEFENDANTS, ELEVIEW INTERNATIONAL INC., OLEG NAYANDIN, and VITALIY BORISENKO, did willfully engage in conduct prohibited by and contrary to, and refrained from engaging in conduct required by the Export Administration Regulations, and caused and aided and abetted others to do the same, each count further described in the table below:

| **COUNT** | **GOODS** |
|---|---|
| TWO | On or about June 6, 2022, the DEFENDANTS exported and caused to be exported to Russia without a license a telecommunications switch with model number WS-C2960S-24PS-L, with Export Control Classification Number 5A991.C, which required a license for export to Russia. |
| THREE | On or about June 6, 2022, the DEFENDANTS exported and caused to be exported to Russia without a license a telecommunications switch with model number WS-C2960S-24TS-L, with Export Control Classification Number 5A991.C, which required a license for export to Russia. |
| FOUR | On or about July 8, 2022, the DEFENDANTS exported and caused to be exported to Russia without a license an ethernet transceiver with model number KSZ9031RNX1A, with Export Control Classification Number 5A991.b, which required a license for export to Russia. |
| FIVE | On or about August 17, 2022, the DEFENDANTS exported and caused to be exported to Russia without a license a radiofrequency amplifier with manufacturer's part number HMC8413LP2FE, with Harmonized Tariff Schedule code 854233, which required a license for export to Russia. |
| SIX | On or about June 12, 2022, the DEFENDANTS exported and caused to be exported to Russia without a license an oscilloscope with model number DSOX1202A, with Export Control Classification Number 3A992.A, which required a license for export to Russia. |

(In violation of Title 50, United States Code, Sections 4819(a)(1), (a)(2)(A), (a)(2)(B), and (b)).

COUNTS SEVEN THROUGH ELEVEN
(Smuggling Goods from the United States)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about the following dates, in Chantilly, Virginia, within the Eastern District of Virginia, the DEFENDANTS, ELEVIEW INTERNATIONAL INC., OLEG NAYANDIN, and VITALIY BORISENKO, did fraudulently and knowingly export and send from the United States the following merchandise, articles, and objects, contrary to the Export Control Reform Act of 2018, the Export Administration Regulations, the Foreign Trade Regulations (15 C.F.R. Part 30), and 13 U.S.C. § 305, each count further described in the table below:

| COUNT | GOODS |
|---|---|
| SEVEN | Telecommunications switch with model number WS-C2960S-24PS-L, shipped on or about June 6, 2022. |
| EIGHT | Telecommunications switch with model number WS-C2960S-24TS-L, shipped on or about June 6, 2022. |
| NINE | Ethernet transceiver with model number KSZ9031RNX1A, shipped on or about July 8, 2022. |
| TEN | Radiofrequency amplifier with manufacturer's part number HMC8413LP2FE, shipped on or about August 17, 2022. |
| ELEVEN | Oscilloscope with model number DSOX1202A, shipped on or about June 12, 2022. |

(In violation of Title 18, United States Code, Sections 554(a) and 2.)

COUNTS TWELVE THROUGH SIXTEEN
(Submission of False or Misleading Export Information)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about the following dates, in Chantilly, Virginia, within the Eastern District of Virginia, the DEFENDANTS, ELEVIEW INTERNATIONAL INC., OLEG NAYANDIN, and VITALIY BORISENKO, did willfully make false and misleading representations, statements, and certifications, and falsified and concealed material fact, directly to the U.S. Department of Commerce, and an official of another United States agency, and indirectly through another person: (1) in connection with the preparation, submission, issuance, use, and maintenance of export control document and report filed and required to be filed pursuant to the EAR, and for the purpose of and in connection with effecting export and reexport of an item subject to the EAR; and (2) for the purpose of and in connection with effecting export, reexport, and in-country transfer of an item subject to the EAR and service and other activity of a United States person, each count further described in the table below:

| COUNT | EXPORT INFORMATION |
|---|---|
| TWELVE | On or about June 6, 2022, the DEFENDANTS falsely claimed on Electronic Export Information filed with the U.S. government through the AES that the shipment with reference number PB-74270247 was destined for an end user in Turkey, knowing that the shipment was in fact destined for an end user in Russia. |
| THIRTEEN | On or about August 11, 2022, the DEFENDANTS falsely claimed on Electronic Export Information filed with the U.S. government through the AES that the shipment with reference number PB-93907738 was destined for an end user in Turkey, knowing that the shipment was in fact destined for an end user in Russia. |
| FOURTEEN | On or about July 8, 2022, the DEFENDANTS falsely claimed on Electronic Export Information filed with the U.S. government through the AES that the shipment with reference number PB-94213085 was destined for an end user |

| | |
|---|---|
| | in Finland, knowing that the shipment was in fact destined for several end users in Russia. |
| FIFTEEN | On or about August 17, 2022, the DEFENDANTS falsely claimed on Electronic Export Information filed with the U.S. government through the AES that the shipment with reference number PB-37801075 was destined for an end user in Finland, knowing that the shipment was in fact destined for an end user in Russia. |
| SIXTEEN | On or about June 12, 2022, the DEFENDANTS falsely claimed on Electronic Export Information filed with the U.S. government through the AES that the shipment with reference number BEKZ-32427938 was destined for an end user in Kazakhstan, knowing that the shipment was in fact destined for several end users in Russia. |

(In violation of Title 50, United States Code, Sections 4819(a)(1), (a)(2)(F), and (b).)

COUNT SEVENTEEN
(Submission of False or Misleading Export Information)

THE GRAND JURY FURTHER CHARGES THAT:

The GENERAL ALLEGATIONS of this Indictment are realleged and incorporated by reference as though fully set forth herein.

On or about April 1, 2022, in Chantilly, Virginia, within the Eastern District of Virginia, the defendant OLEG NAYANDIN did willfully make false and misleading representation, statement, and certification, and falsified and concealed material fact, directly to the U.S. Department of Commerce, and an official of another United States agency, and indirectly through another person: (1) in connection with the preparation, submission, issuance, use, and maintenance of export control document and report filed and required to be filed pursuant to the EAR, and for the purpose of and in connection with effecting export and reexport of an item subject to the EAR; and (2) for the purpose of and in connection with effecting export, reexport, and in-country transfer of an item subject to the EAR and service and other activity of a United States person, contrary to 50 U.S.C. § 4819(a)(2)(F);

by representing to a Special Agent of the Department of Commerce that ELEVIEW INTERNATIONAL INC. and RUSSIAN TELECOM CO-KZ had an existing business relationship for one year. The statements and representations were false because, as the defendant OLEG NAYANDIN then and there knew, ELEVIEW INTERNATIONAL INC. had not in fact done business with RUSSIAN TELECOM CO-KZ for one year.

(In violation of Title 50, United States Code, Sections 4819(a)(1), (a)(2)(F), and (b).)

FORFEITURE NOTICE

THE GRAND JURY FURTHER FINDS PROBABLE CAUSE THAT:

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are hereby notified that if convicted of any of the violations set forth in Counts 1 through 6 and Counts 12 through 17 of this Indictment, the defendants shall forfeit to the United States, pursuant to 50 U.S.C. § 4819(d)(1), the following: (1) any property used or intended to be used, in any manner, to commit or facilitate the violation; (2) any property constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation: and (3) any property constituting an item or technology that is exported or intended to be exported in violation of law.

Pursuant to Federal Rule of Criminal Procedure 32.2(a), the defendants are hereby notified that if convicted of any of the violations set forth in Counts 7 through 11 of this Indictment, the defendants shall forfeit to the United States, pursuant to pursuant 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

The assets subject to forfeiture include, but are not limited to, the following: a monetary judgment in the amount of not less than $ 480,000.00, representing the proceeds the defendants obtained as a result of the violations described in this Indictment.

If any property that is subject to forfeiture above, as a result of any act or omission of the defendant, (a) cannot be located upon the exercise of due diligence, (b) has been transferred to, sold to, or deposited with a third party, (c) has been placed beyond the jurisdiction of the Court, (d) has been substantially diminished in value, or (e) has been commingled with other property that cannot be divided without difficulty, it is the intention of the United States to seek forfeiture

of any other property of the defendant, as subject to forfeiture under Title 21, United States Code, Section 853(p).

(In accordance with Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c); Title 50, United States Code, Section 4819(d)(1), and Rule 32.2(a), Federal Rules of Criminal Procedure.)

A TRUE BILL

Pursuant to the E-Government Act,
The original of this page has been filed
under seal in the Clerk's Office

Foreperson of the Grand Jury

Erik S. Siebert
United States Attorney

By:

Gavin R. Tisdale
Amanda St. Cyr
Assistant United States Attorneys

Garrett Coyle
Trial Attorney, National Security Division
U.S. Department of Justice