UNITED STATES DEPARTMENT OF COMMERCE
BUREAU OF INDUSTRY AND SECURITY
WASHINGTON, D.C. 20230

In the Matter of:

Eleview International Inc.
Oleg Nayandin
Vitaliy Borisenko
4262 Entre C. Ste K
Chantilly, VA 20151

Respondents

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made by and between Eleview International Inc. ("Eleview"), Oleg Nayandin ("Nayandin"), Vitaliy Borisenko ("Borisenko") (collectively, the "Respondents"), and the Bureau of Industry and Security, U.S. Department of Commerce ("BIS") (collectively, the "Parties"), pursuant to Section 766.18(a) of the Export Administration Regulations (the "Regulations").[1]

WHEREAS, BIS has notified the Respondents of its intentions to initiate an administrative proceeding against them pursuant to the Regulations;[2]

WHEREAS, BIS has issued a Proposed Charging Letter to the Respondents that alleges that they jointly and severally committed three violations of the Regulations, specifically:

---

[1] The Regulations are issued under the authority of the Export Control Reform Act of 2018, Title XVII, Subtitle B of Pub. L. 115-232, 132 Stat. 2208 ("ECRA").

[2] The Regulations are currently codified in the Code of Federal Regulations (the "Code") at 15 C.F.R. Parts 730-774 (2025). The regulations governing the violations at issue, which occurred in 2022-2023, are found in the 2022-2023 versions of the Code (15 C.F.R. Parts 730-774 (2022-2023)). The 2025 Regulations govern the procedures that apply to this matter.

**Charge 1 15 C.F.R. § 764.2(e) – Acting with Knowledge of a Violation**

1. On multiple occasions from at least on or about February 24, 2022 through on or about June 21, 2023, the Respondents transferred and forwarded items subject to the EAR, including items classified under Export Control Classification Numbers (ECCNs) 3A992.a, 5A991.b, and 5A992.c, to end users in Russia without the required BIS licenses.

2. Beginning with a rulemaking effective February 24, 2022, BIS responded to the further Russian invasion of Ukraine by implementing a series of comprehensive export controls meant to severely restrict Russia's access to technologies and other items that could be used for its military capabilities. At all times during the relevant period, Section 746.5[3] of the Regulations imposed a BIS license requirement for export, reexport, or in-country transfer of any item listed under an ECCN on the Commerce Control List (CCL) at Supplement No. 1 to Part 774 of the Regulations.

3. Eleview is a company that, among other services, conducts a freight consolidation and forwarding business out of a warehouse in Chantilly, Virginia. Eleview's website (BuyUSA.ru) allows individuals in Russia to order goods from the United States directly from U.S. retailers, which shipped the products to Eleview for consolidation and shipment to the customer, either directly or through another freight forwarder. Nayandin is the owner, CEO, and President of Eleview. Borisenko is an Eleview employee involved in the day-to-day operations of Eleview's freight forwarding business. Both Nayandin and Borisenko were involved in the export of the prohibited goods.

4. In or about March 2022, the Respondents met with BIS Special Agents at Eleview's warehouse to discuss U.S. export controls on transactions involving Russia. During this meeting, Nayandin stated that Respondents had knowledge of U.S. export controls and that he and Borisenko attended a webinar training on export controls and were familiar with the Department of Commerce's licensing platform. Nayandin also stated that Eleview did not ship items that required a license. BIS Special Agents provided guidance on export control topics such as red flags, reporting export violations, guidance for freight forwarders, lists to check, know your customer, records to be maintained, embargoed nations, and general prohibitions, and followed up with written guidance on these topics. Despite this, the Respondents subsequently coordinated and participated in shipment of goods to Turkey, Finland, and Kazakhstan either knowing or deliberately ignoring red flags that the goods would be thereafter shipped to Russia (*i.e.*, transshipped). Among those items transshipped through these countries to Russia were items the

---

[3] While the applicable license requirement at the time of the violations was found in Section 746.5, the same requirement has since been moved to Section 746.8(a)(1), pursuant to a June 2024 amendment to the EAR. 89 Fed. Reg. 51644 (June 18, 2024).

Respondents knew, or had reason to know, required BIS licenses for export, but for which the Respondents neither sought nor obtained licenses.

5. By transferring and forwarding items subject to the EAR with knowledge that a violation of the EAR was intended to occur in connection with the items, the Respondents committed one violation of Section 764.2(e) of the Regulations.

**Charge 2 15 C.F.R. § 764.2(g) – Misrepresentation and Concealment of Facts**

6. On multiple occasions from on or about February 24, 2022 through on or about June 21, 2023, the Respondents made false and misleading statements of material fact to a U.S.-based freight forwarding company in connection with the submission of an Electronic Export Information (EEI) filing, which collects basic information about items exported and the parties to an export.

7. The Regulations require exporters to file EEI for certain exports, including when an export requires a license application, regardless of value or destination. 15 C.F.R. § 758.2(b)(2). The EEI is an "export control document," as defined in § 772.1 of the Regulations, and furthermore, "is a statement to the United States Government that the transaction occurred as described." *Id.* § 758.1(a).

8. In the course of coordinating and participating in transshipment through Turkey, Finland, and Kazakhstan, the Respondents directed the filing of EEI falsely claiming that the end users of the associated transactions were in Turkey, Finland, or Kazakhstan, when in fact they knew or deliberately ignored red flags suggesting that some or all of the items in some of the shipments were in fact destined for end users in Russia.

9. At all times during the relevant period, the Respondents had a responsibility as the exporter and United States Principal Party in Interest of the transaction to ensure the accuracy of information provided to the freight forwarder for the purpose of effecting the export of items subject to the EAR. The Respondents were not absolved of their responsibility to ensure the accuracy of such information because of their use of a freight forwarder to effectuate their exports. *See* 15 C.F.R § 758.3.

10. By submitting false and misleading information in connection with the submission of an EEI on multiple occasions, the Respondents committed one violation of Section 764.2(g) of the Regulations.

**Charge 3 15 C.F.R. § 764.2(g) – Misrepresentation and Concealment of Facts**

11. On one occasion in or around April 2022, the Respondents made false and misleading statements to BIS in the course of an export subject to the EAR, when they provided false information in a Form BIS-711 "Statement by Ultimate Consignee and Purchaser" and sent it to a BIS Special Agent.

12. Telecommunications switches classified as 5A991.c have an array of potential applications, including use by consumers or use by militaries to create and expand communication networks. In or around February and March 2022, Eleview arranged for a shipment of switches classified under 5A991.c to a telecommunications company in Kazakhstan that Respondents knew was affiliated with a Russian telecommunications company. The Russian telecommunications company was a supplier to Russia's Federal Security Service in addition to civilian businesses and consumers.

13. Although the Russian telecommunications company had been a client of Eleview for 10 or more years, exports of such items to Russia were no longer permissible without a BIS license under the expanded export controls to Russia. The Respondents listed the Kazakhstan affiliate as the ultimate consignee and Kazakhstan as the country of ultimate destination, when they knew or deliberately ignored red flags that the Russian telecommunications company in Russia was the ultimate consignee.

14. In or around April 2022, Nayandin emailed a BIS Special Agent a Form BIS-711 for this shipment of switches to the Kazakhstan affiliate of the Russian telecommunications company. The BIS-711 contained false information regarding the length of time that Eleview had been in business with the Kazakhstan affiliate. At the time Nayandin sent the certificate, he knew the information in the BIS-711 was false.

15. By making a false and misleading statement to a BIS Special Agent in the course of an export subject to the EAR, the Respondents committed one violation of Section 764.2(g) of the Regulations.

WHEREAS, the Respondents have reviewed the Proposed Charging Letter and are aware of the allegations made against them and the administrative sanctions that could be imposed against them if the allegations are found to be true;

WHEREAS, the Respondents have reviewed, with the assistance of counsel, the terms of this Agreement, the Order ("Order") that the Assistant Secretary of Commerce for Export Enforcement, or appropriate designee, will issue if he approves this Agreement as the final resolution of this matter, and the Proposed Charging Letter, and understands the terms of all three documents;

WHEREAS, the Respondents enter into this Agreement voluntarily and with full knowledge of their rights, after having consulted with counsel;

WHEREAS, the Parties enter into this Agreement having taken into consideration the Plea Agreements between the Respondents and the United States Attorney's Office for the Eastern District of Virginia (the "Plea Agreements");

WHEREAS, the Respondents state that no promises or representations have been made to them other than the agreements and considerations herein expressed or expressed in the Plea Agreements;

WHEREAS, the Respondents admit committing the alleged conduct described in paragraphs number 1 through 15, above; and

WHEREAS, the Respondents agree to be bound by the Order, if issued;

NOW THEREFORE, the Parties hereby agree, for purposes of this Agreement, as follows:

1. BIS has jurisdiction over the Respondents, under the Regulations, in connection with the matters alleged in the Proposed Charging Letter.

2. The following sanctions shall be imposed against Eleview:

a. Eleview shall be assessed a civil penalty in the amount of $125,000. Payment of the $125,000 shall be suspended until Respondent makes payment of the criminal penalty pursuant to the terms of the Plea Agreements, and thereafter such payments shall be credited toward the total $125,000 penalty amount due under this agreement. If Respondent fails to pay the criminal penalty, then the suspension shall be revoked and the full amount of the suspended penalty shall be imposed and become immediately due.

b. Eleview's officers and employees shall complete export compliance training within three months from the date of the Order, and Eleview's officers and employees shall complete export compliance training annually during the three-year probationary period for a total of three compliance trainings. Before Eleview's officers and employees attend a compliance training course or program, Eleview shall notify the Office of Export Enforcement, Special Agent in Charge of the Washington Field Office, of the course or program they have selected to attend. No later than one month after attending the compliance training course or program, Eleview shall submit a certification of attendance from the training provider to the Office of Export Enforcement, Washington Field Office, 45610 Woodland Road, Suite 425, Sterling, VA 20166.

c. For a period of three (3) years from the date of the Order, Eleview shall be made subject to a suspended three-year denial of their export privileges under the Regulations ("denial"). As authorized by Section 766.18(c) of the Regulations, such denial shall be suspended during this three-year probationary period and shall thereafter be waived, provided that:

i. Eleview has fully and timely paid the civil penalty in accordance with Paragraph 2.a above;

ii. Eleview have fully and timely complied with the training requirements in accordance with Paragraph 2.b above;

iii. Eleview have complied with the provisions of the Plea Agreements;

iv. Eleview has not committed another violation of ECRA, the Regulations, or any order, license or authorization issued under ECRA or the Regulations.

d. If Eleview does not fully and timely pay the civil penalty in accordance with Paragraph 2.a, comply with the training requirements in accordance with Paragraph 2.b, or comply with the conditions of the probationary period in accordance with Paragraph 2.c above, the suspension of the denial may be modified or revoked by BIS pursuant to Section 766.17(c) of the Regulations and a denial order (including a three-year denial period) activated against Eleview.

3. The following sanctions shall be imposed against Nayandin:

a. Nayandin shall complete export compliance training within three months from the date of the Order, and shall complete export compliance training annually during the three-year probationary period for a total of three compliance trainings. Before Nayandin attends a compliance training course or program, Nayandin shall notify the Office of Export Enforcement, Special Agent in Charge of the Washington Field Office, of the course or program he has selected to attend. No later than one month after attending the compliance training course or program, Nayandin shall submit a certification of attendance from the training provider to the Office of Export Enforcement, Washington Field Office, 45610 Woodland Road, Suite 425, Sterling, VA 20166.

b. For a period of three (3) years from the date of the Order, Nayandin shall be made subject to a suspended three-year denial of his export privileges under the Regulations ("denial"). As authorized by Section 766.18(c) of the

Regulations, such denial shall be suspended during this three-year probationary period and shall thereafter be waived, provided that:

i. Nayandin has fully and timely cooperated in Eleview's obligation to pay the civil penalty in accordance with Paragraph 2.a above;

ii. Nayandin has fully and timely complied with the training requirements in accordance with Paragraph 3.a above;

iii. Nayandin has complied with the provisions of the Plea Agreements;

iv. Nayandin has not committed another violation of ECRA, the Regulations, or any order, license or authorization issued under ECRA or the Regulations.

c. If Nayandin does not comply with the training requirements in accordance with Paragraph 3.a above or the conditions of the probationary period in accordance with Paragraph 3.b above, the suspension of the denial may be modified or revoked by BIS pursuant to Section 766.17(c) of the Regulations and a denial order (including a three-year denial period) activated against Nayandin.

4. The following sanctions shall be imposed against Borisenko:

a. Borisenko shall complete export compliance training within three months from the date of the Order, and shall complete export compliance training annually during the three-year probationary period for a total of three compliance trainings. Before Borisenko attends a compliance training course or program,

Borisenko shall notify the Office of Export Enforcement, Special Agent in Charge of the Washington Field Office, of the course or program he has selected to attend. No later than one month after attending the compliance training course or program, Borisenko shall submit a certification of attendance from the training provider to the Office of Export Enforcement, Washington Field Office, 45610 Woodland Road, Suite 425, Sterling, VA 20166.

b. For a period of three (3) years from the date of the Order, Borisenko shall be made subject to a suspended three-year denial of his export privileges under the Regulations ("denial"). As authorized by Section 766.18(c) of the Regulations, such denial shall be suspended during this three-year probationary period and shall thereafter be waived, provided that:

i. Borisenko has fully and timely complied with the training requirements in accordance with Paragraph 4.a above;

ii. Borisenko has complied with the provisions of the Plea Agreements;

iii. Borisenko has not committed another violation of ECRA, the Regulations, or any order, license or authorization issued under ECRA or the Regulations.

c. If Borisenko does not comply with the training requirements in accordance with Paragraph 4.a above or the conditions of the probationary period in accordance with Paragraph 4.b above, the suspension of the denial may be modified or revoked by BIS pursuant to Section 766.17(c) of the Regulations and a denial order (including a three-year denial period) activated against Borisenko.

5. If the suspension of the denial of privileges described in paragraphs 2–4 above is modified or revoked as to any Respondent, the activation order may also revoke any BIS licenses in which that Respondent has an interest at the time of the activation order.[4] Should the suspension of the denial be modified or revoked pursuant to Section 766.17(c) of the Regulations, and a denial order (including a three-year denial period) be activated against any Respondent, for the duration of such denial order, that Respondent, and when acting for or on that Respondent's behalf, that Respondent's successors, assigns, directors, officers, employees, representatives, or agents (hereinafter collectively referred to as "Denied Person"), may not, directly or indirectly, participate in any way in any transaction involving any commodity, software or technology (hereinafter collectively referred to as "item") exported or to be exported from the United States that is subject to the Regulations, or in any other activity subject to the Regulations, including, but not limited to:

i. Applying for, obtaining, or using any license, license exception, or export control document;

ii. Carrying on negotiations concerning, or ordering, buying, receiving, using, selling, delivering, storing, disposing of, forwarding, transporting, financing, or otherwise servicing in any way, any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or engaging in any other activity subject to the Regulations; or

---

[4] Such a revocation would include licenses existing at the time of the activation order.

iii. Benefitting in any way from any transaction involving any item exported or to be exported from the United States that is subject to the Regulations, or from any other activity subject to the Regulations.

6. Subject to the approval of this Agreement pursuant to Paragraph 10 hereof, the Respondents hereby waive all rights to further procedural steps in this matter including, without limitation, any right to: (a) an administrative hearing regarding the allegations in any charging letter; and (b) seek judicial review or otherwise contest the validity of this Agreement or the Order, if issued. The Respondents also waive and will not assert any Statute of Limitations defense, and the Statute of Limitations will be tolled, in connection with any violation of the Act or the Regulations arising out of the transactions identified in the Proposed Charging Letter or enforcement of this Agreement and the Order, if issued.

7. BIS agrees that upon successful compliance in full with the terms of this Agreement and the Order, if issued, BIS will not initiate any further administrative proceeding against the Respondents in connection with any violation of the Regulations arising out of the transactions specifically detailed in the Proposed Charging Letter.

8. This Agreement is for settlement purposes only. Therefore, if this Agreement is not accepted and the Order is not issued by the Assistant Secretary of Commerce for Export Enforcement, or appropriate designee, pursuant to Section 766.18(a) of the Regulations, no Party may use this Agreement in any administrative or judicial proceeding and the Parties shall not be bound by the terms contained in this Agreement in any subsequent administrative or judicial proceeding.

9. No agreement, understanding, representation or interpretation not contained in this Agreement may be used to vary or otherwise affect the terms of this Agreement or the Order, if issued; nor shall this Agreement serve to bind, constrain, or otherwise limit any action by any other agency or department of the U.S. Government with respect to the facts and circumstances addressed herein.

10. This Agreement shall become binding on the Parties only if the Assistant Secretary of Commerce for Export Enforcement, or appropriate designee, approves it by issuing the Order, which will have the same force and effect as a decision and order issued after a full administrative hearing on the record.

11. BIS will make the Proposed Charging Letter, this Agreement, and the Order, if issued, available to the public.

12. Each signatory affirms that he/she has authority to enter into this Agreement and to bind his/her respective party to the terms and conditions set forth herein.

BUREAU OF INDUSTRY AND SECURITY
U.S. DEPARTMENT OF COMMERCE

Jeffrey Levine
Digitally signed by JEFFREY LEVINE
Date: 2025.10.23 08:22:30 -04'00'
Deputy Director (A), OEE
FOR
________________________
Steven Fisher
Acting Director of Export Enforcement

Date: ________________________

ELEVIEW INTERNATIONAL INC.

________________________
Oleg Nayandin
Owner, Chief Executive Officer and President

Date: 10. 22. 2025

Reviewed and approved by:

________________________
Gregory Hunter, Esq.
Counsel for Eleview International Inc.

Date: 22 October 2025

OLEG NAYANDIN

________________________________

Oleg Nayandin

Date: 10.22. 2025

Reviewed and approved by:

________________________________

John Edward Yancey Ellis, Esq.
Counsel for Oleg Nayandin

Date: 10/22/2025

VITALIY BORISENKO

________________________________

Vitaliy Borisenko

Date: __________________________

Reviewed and approved by:

________________________________

Ann Mason-Rigby, Esq.
Counsel for Vitaliy Borisenko

Date: __________________________

OLEG NAYANDIN

______________________________
Oleg Nayandin

Date: _________________________

Reviewed and approved by:

______________________________
John Edward Yancey Ellis, Esq.
Counsel for Oleg Nayandin

Date: _________________________

VITALIY BORISENKO

[signature]
Vitaliy Borisenko

Date: 10/21/2025

Reviewed and approved by:

[signature]
Ann Mason-Rigby, Esq.
Counsel for Vitaliy Borisenko

Date: 10/21/2025